## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | | |
|---|---|---|
| In re: CHARLES EDWARD RECTOR and | ) | Case No. 09-62669-LYN |
| CHRISTINE ETHEL RECTOR, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| MORTGAGE ELECTRONIC | ) | Adv. No. 10-06011 |
| REGISTRATION SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTINE ETHEL RECTOR, | ) | |
| CHARLES EDWARD RECTOR, | ) | |
| BLAZER FINANCIAL SERVICES, | ) | |
| SAMUEL W. LANHAM, | ) | |
| DR. F. M. GRAVES, | ) | |
| EQUITY ONE CONSUMER LOAN, and | ) | |
| BLUE RIDGE ORTHOPEDIC ASSOC., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| HERBERT L. BESKIN, Chapter 13 Trustee, | ) | |
| Third-Party Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC., | ) | |
| | ) | |
| Third-Party Defendant, | ) | |
| | ) | |

## MEMORANDUM[1]

Mortgage Electronic Registration Systems, Inc., ("MERS") filed a complaint in state

court seeking to impose a first-priority equitable deed of trust on real property owned by

---

[1] The Trustee was incorrectly designated as a third-party plaintiff. He should have been designated as a defendant. See Fed.R.Civ.P. 20(a)(2) as made applicable in adversary proceedings by Fed.R.Bankr.P. 7020. The pleading containing the Trustee's claim(s) against MERS was incorrectly styled as a third-party complaint and was incorrectly docketed as such. It should have been styled and docketed as a counterclaim. For the sake of consistency, the nomenclature used in the docket is used herein.

Christine S. Rector and Charles E. Rector ("the Debtors"). The Debtors filed a Chapter 13

petition. The state court complaint was removed to this Court. The Chapter 13 trustee ("the

Trustee") intervened seeking to avoid the lien created by the deed of trust in favor of MERS.

MERS and the Chapter 13 trustee each filed a motion for summary judgment. Those motions are

now before the Court.

### Jurisdiction

This court has jurisdiction over these matters. 28 U.S.C. §§ 1334(a) & 157(a). This is a

core proceeding. 28 U.S.C. § 157(b)(2)(A)&(K). Accordingly, a final order may issue from this

Court. This memorandum shall constitute the court's findings of fact and conclusions of law as

directed by Fed.R.Civ.P. 52 which is made applicable in this adversary proceeding by

Fed.R.Bankr.P. 7052.

### Facts

The facts are not in dispute. The Debtors are the debtors in the above-styled bankruptcy

case. MERS is a Delaware Corporation, duly authorized to conduct business in the

Commonwealth of Virginia. On February 19, 1991, the Debtors purchased real property

commonly known as 6345 Myers Hill Road, Jeffersonton, Culpeper County, Virginia ("the Real

Property"). On October 26, 2005, the Debtors borrowed $178,400.00 from WMC Mortgage

Corporation ('WMC"). The Debtors executed a promissory note ("the Promissory Note") and

granted WMC a deed of trust ("the Deed of Trust") against the Real Property to secure the debt.

MERS, acting as the nominee for WMC, was designated as the beneficiary under the Deed of

Trust. The Deed of Trust was lost and never recorded.[2]

---

[2]        MERS asserts that the Deed of Trust was forwarded to the Clerk of the Culpeper Circuit Court
for recording, "whereupon it was lost before it was recorded." It is not apparent from the record whether the Deed of
Trust was lost by MERS, lost by WMC, lost in transit to the Clerk of the Circuit Court for the County of Culpeper,
or lost after it arrived there. This issue of fact, however, is not relevant to the resolution of this dispute.

On June 9, 2009, MERS filed a complaint ("the Culpeper Complaint") against the

Debtors in the Circuit Court for the County of Culpeper, Commonwealth of Virginia ("the

Culpeper Court")[3] initiating a legal action ("the Culpeper Action").  MERS named

five other persons as defendants in the Culpeper Action.[4]  Each of the five had obtained a

judgment against one or both of the Debtors and had recorded its judgment in the land records

for Culpeper County.  MERS, through the Culpeper Complaint, sought to validate the Deed of

Trust and impose the same as a first-priority equitable deed of trust on the Real Property.  The

Culpeper Complaint also sought an order directing the Deed of Trust be recorded in the land

records of Culpeper County.  Service of the Culpeper Complaint was not perfected as to all

defendants.  There is no indication in the record in this case that any further pleadings were filed

in the Culpeper Action.   No hearings have been held in the Culpeper Action.

Also on June 9, 2009, MERS recorded a memorandum of *lis pendens* in the land records

of Culpeper County.

On August 20, 2009, the Debtors filed the instant chapter 13 petition.  The Debtors

scheduled the Real Property on Schedule A.  The Debtors indicated that the Real Property was

worth $142,500.00 and that it secured a claim in the amount of $44,151.00 (the amount of the

second deed of trust of Litton Loan Servicing ("Litton") on the property).  On Schedule C, they

indicated that there were two deeds of trust on the Real Property, those of MERS and Litton.

On August 27, 2009, the Debtors filed a proposed Chapter 13 plan.   On September 17,

2009, the Debtors filed an amended Chapter 13 plan.  Paragraph 3.C. of the amended plan

provides in part as follows:

---

[3]        The case was designated as case number CL09000245-00 by the Clerk of the Court.

[4]        The five persons are Blazer Financial Services, Samuel W. Lanham, Dr. F. M. Graves, Equity One
Consumer Loan, and Blue Ridge Orthopedic Associates.

**Collateral to be surrendered.**  Upon confirmation of the plan, or before, the debtor will surrender his or her interest in the collateral securing the claims of the following creditors in satisfaction of the secured portion of such creditor's allowed claims.   To the extent that the collateral does not satisfy such creditor's claim, any timely filed deficiency claim to which the creditor is entitled shall be paid as a non-priority, unsecured claim.  The order confirming the plan shall have the effect of terminating the automatic stay as to the collateral surrendered.

Following this language is a list of the creditors to whom the collateral will be surrendered in satisfaction of the secured portion of their claims.[5]

On November 20, 2009, an order was entered on docket confirming the Debtors' Chapter 13 plan.

On September 28, 2009, an order was entered on docket that granted American's Servicing Company, as Servicer for Deutche Bank National Trust Company, as trustee for Morgan Stanley Capital I Inc. Trust, relief from the automatic stay to permit it to "enforce the lien of its Deed of Trust" pertaining to the Real Property.  The order was endorsed "Seen and Agreed" by counsel for the Debtor and by the Trustee.

On February 12, 2010, MERS removed the Culpeper Action to this court.  On April 16, 2010, the Trustee filed a motion to intervene in this adversary proceeding, which motion was granted.  On April 26, 2010, the Trustee filed a pleading in this adversary proceeding that was styled as a Third-Party Complaint.  In the Third-Party Complaint, the trustee asserted that the security interest of MERS was not properly perfected and was, therefore, avoidable under 11 U.S.C. § 544.  MERS responded generally denying that its security interest was avoidable. MERS further asserted that the Third-Party Complaint failed to state a claim upon which relief could be granted and further asserted that the claim was barred by the doctrine of claim preclusion by virtue of the Debtor's confirmed chapter 13 plan.  The Trustee subsequently filed

---

[5]    A facsimile copy of the relevant portion of ¶ 3.C. of the amended plan is provided as Exhibit A to this memorandum.

an amended complaint that added a cause of action under 11 U.S.C. § 547.

MERS filed a motion for summary judgment.  The Trustee filed a countermotion for summary judgment.

### *Discussion*

This matter comes before the Court on countermotions for summary judgment by MERS and the Trustee.  A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c) as made applicable by Fed. R. Bankr. P. 7056. The parties need not formally offer their outside matter as evidence or have it marked as an exhibit at the hearing on the motion.  Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d, § 2721, p. 366 (1998).

The court may not try issues of fact on a Rule 56 motion but may only determine whether there are issues to be tried.  Id., § 2712 at p. 205-6 (citations omitted).  Summary judgment is improper if the existence of material fact issues is uncertain.  Id. at 210.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  "The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  Beale v. Hardy, 769F.2d 213, 214 (4th Cir. 1985) (Citing Barwick v. Celotex Corporation, 736 F.2d 946, 963 (4th Cir.1984)).  For issues on which the non-moving party has the burden of proof, the moving party

need not introduce evidence of the absence of proof of that issue if the non-moving party has

failed to produce any evidence on the issue. <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 325 (1986).

Both parties have briefed the Court on the legal issues.  It is proper to proceed to judgment.

## I.

We turn first to MERS' motion for summary judgment.  MERS argues that the doctrine

of res judicata bars the Trustee from administering the Real Property because the plan provides

that it is to be surrendered.  MERS' also argues that neither the trustee nor the Debtors have

standing because neither has any interest in, or right to, the Real Property because it was

removed from the estate by the Chapter 13 plan.

## A.

Under the doctrine of res judicata a party is barred from raising a claim if (1) there has

been a final judgment on the merits (2) resolving claims by the same parties or privies (3) in a

subsequent suit based on the same cause of action.  <u>Ohio Valley environmental Coalition v.</u>

<u>Aracoma Coal Co.</u>, 556 F.3d 177, 210 (4th Cir. 2009).[6]

The order confirming the chapter 13 plan was a final judgment on the merits.  <u>See</u>  <u>United</u>

<u>Student Aid Funds, Inc. v. Esponosa (In re Esponosa)</u>, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010).

The first prong of the test is met.

The provisions of a confirmed plan bind the debtor and each creditor, whether or not the

---

[6]      In <u>Aracoma Coal</u>, the Court wrote:

> Res judicata or claim preclusion bars a party from suing on a claim that has already been
> "litigated to a final judgment by that party or such party's privies and precludes the assertion by
> such parties of any legal theory, cause of action, or defense which could have been asserted in that
> action." 18 James Wm. Moore et al., <u>Moore's Federal Practice</u> § 131.10(1)(a) (3d ed.2008). For res
> judicata to prevent a party from raising a claim, three elements must be present: "1) a judgment on
> the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a
> subsequent suit based on the same cause of action."  <u>Aliff v. Joy Mfg. Co.</u>, 914 F.2d 39, 42 (4th
> Cir.1990).

claim of such creditor is provided for by the plan, and whether or not such creditor has objected

to, has accepted, or has rejected the plan.  11 U.S.C. § 1327(a).   In the absence of due process

concerns, a bankruptcy court confirmation order is treated as res judicata as to all matters

decided in the confirmed plan.  See In re Linkous, 990 F.2d 160 (4th Cir. 1993).  The Chapter 13

plan binds the Chapter 13 trustee.  See, e.g., In re Layo, 460 F.3d 289, 296-297 (2nd Cir. 2006).[7]

MERS and the Chapter 13 trustee were both parties to, and are bound by, the order confirming

the Chapter 13 plan.  The second prong of the test is met.

      In order to satisfy the third prong of the test, there must be an identity of causes of action.

Here there is no such identity.  The two actions considered are a motion to confirm a Chapter 13

plan and an adversary complaint to avoid a lien.  In general, an order confirming a plan cannot

have a preclusive effect regarding the existence of a lien.

> . . . Because confirmation of a Chapter 13 plan is res judicata only as to issues that
> can be raised in the less formal procedure for contested matters, see In re Beard, 112 B.R.
> 951, 955-56 (Bankr.N.D.Ind.1990) (contrasting adversary proceedings with contested
> matters), *confirmation generally cannot have preclusive effect as to the validity of a lien,*
> *which must be resolved in an adversary proceeding.* In other words, "[i]f an issue must
> be raised through an adversary proceeding it is not part of the confirmation process and,
> unless it is actually litigated, confirmation will not have a preclusive effect.... [A] secured
> creditor is not bound by the terms of the confirmed plan with respect to limitations upon
> the scope or validity of the lien securing its claim." Id. at 956.

Cen-Pen v. Hanson, 58 F.3d 89, 93 (4th Cir. 1995) (Emphasis added.).

      The causes of action can only be identical in the two proceedings if the confirmed plan

contains a provision that allows or disallows MERS' claim as to amount and character.   The

plan contains no such provision.

      MERS' argument fails to recognize the difference between the plan confirmation process

---

[7]    A Chapter 13 trustee may file a motion to amend a plan, however, if there is a significant and
unanticipated change in circumstances.  See 11 U.S.C. § 1329 and Murphy v. O'Donnell (In re Murphy), 474 F.3d
143 (4th Cir. 2007).

and the claims allowance process.  The Chapter 13 plan confirmation process is conducted in

order to determine how claims are to be treated in a Chapter 13 case.  See generally 11 U.S.C. §§

1322 & 1325.  The claims allowance process is conducted in order to determine the existence,

amount and character of the each claim that is to be treated in accordance with the provisions of

the confirmed Chapter 13 plan.  See generally 11 U.S.C. § 502.  Further, there is nothing in the

confirmed Chapter 13 plan in this case that purports to allow or disallow claims.  The absence of

any language in the plan in this case is a significant recognition that claims will be allowed and

disallowed through some process other than the confirmation process.

The Chapter 13 statutory scheme makes clear that the confirmation process and the

claims allowance process are, in the absence of a contra-indicated provision in the plan or the

order confirming the plan, to be conducted separately.  First, the two processes are controlled by

different sections, found in different chapters, of the Bankruptcy Code.  The Chapter 13

confirmation process is controlled by Sections 1322 & 1325 and is unique to Chapter 13 cases.

The claims allowance process is controlled by Section 502 and is applicable to all bankruptcy

cases.

Second, the statutory scheme of the Bankruptcy Code provides that the two processes

occur at different times on different schedules, with the claims allowance process generally

lagging behind the plan confirmation process.  The timing of both processes is determined by the

date on which the first meeting of creditors is held pursuant to 11 U.S.C. §§ 341(a).  A Chapter

13 confirmation hearing must be held not earlier than 20 days and not later than 45 days after the

date of the meeting of creditors under 11 U.S.C. § 341(a).  11 U.S.C. § 1324(b).  In the Western

District of Virginia, the meeting of creditors is generally concluded at the date first set for that

meeting.  Consequently, a hearing on the confirmation of Chapter 13 plan generally must be

held between 20 and 45 days after the date first set for the meeting of creditors.   Many of the

Chapter 13 plans are confirmed at the first hearing.  The majority of Chapter 13 plans are

confirmed at the first hearing or the second hearing, which is generally held within 40 days after

the first hearing.  It necessarily follows that many of the Chapter 13 plans in the Western District

of Virginia are confirmed within 45 days of the date first set for the meeting of creditors and that

the majority of those plans are confirmed on or before the date that is 85 days after the date first

set for the meeting of creditors.[8]

The claims allowance process, on the other hand, can extend to the date that is 150 days

after the date first set for the first meeting of creditors.  In a chapter 13 case, a non-governmental

proof of claim must be filed within 90 days of the date first set for the first meeting of creditors

under 11 U.S.C. § 341(a) in order to be timely filed.   Fed.R.Bankr.P.  3002(a).  After that date,

the debtor and the Chapter 13 trustee have an additional 30 days to file a proof of claim on

behalf of creditors that may not have done so.  Fed.R.Bankr.P.  3004.  If an objection to claim is

filed, the objecting party must give the creditor at least 30 days notice of the hearing on that

objection.   Thus, the final disposition of an objection to claim may not occur until 150 days after

the date first set for the meeting of creditors.  It is clear that Congress did not intend for the

confirmation of a Chapter 13 plan to terminated the claims allowance process.

Finally, there is nothing in the Debtors' plan that purports to allow or disallow claims.

The plan, as noted above, has one purpose.  That is to set out the rules that will determine the

amount that will be paid by the Chapter 13 trustee on account of each claim, once that claim is

---

[8]        Congress intended that a Chapter 13 trustee begin distributing payments to creditors as soon as
practicable upon the confirmation of the plan.  11 U.S.C. § 1326(2).   Congress added this provision in 1994.
Congressman Brooks explained that "[s]uch  payments should be made even prior to the bar date for filing claims,
but only if the trustee can provide adequate protection against any prejudice later filing claimants caused by
distributions prior to the bar date."  140 CONG. REC. H10,770.

allowed as to amount and character.

MERS argues that its assertion that the plan bars re-litigation of its claim is supported by the Court's opinion in <u>Celli v. First National Bank or Northern New York (In re Layo)</u>, 460 F.3d 289 (2nd Cir. 2006).   In <u>Layo</u>, the debtor refinanced the mortgage against his real property.  The proceeds of the second mortgage were used to pay off the first mortgage, but the creditor "inadvertently discharged" the second mortgage.  The plan provided that the "claim of [the creditor] in the amount of $99,000 is secured by a valid first mortgage against debtor's real estate, which is debtor's homestead . . ."  The debtor and the chapter 13 trustee filed an adversary complaint seeking to avoid the second mortgage asserting that it had been discharged and to receive a satisfaction and discharge of the first mortgage because it had been paid in full from the proceeds of the second mortgage.  The Second Circuit Court of Appeals held that the order confirming the plan was a final judgment with preclusive effect under the doctrine of res judicata and that the creditor was entitled to a secured claim in the amount of $99,000.00.

Layo is easily distinguished from the case at bar.   The plan in <u>Layo</u> contained a provision allowing the creditor's claim.  In this case there is no provision in the confirmed Chapter 13 plan that allows or disallows MERS' claim as to amount or character.

B.

MERS also argues that, upon entry of the order confirming the plan, the Real Property was surrendered and neither the Debtors nor the estate retained any interest in, or right to, the Real Property, permitting MERS and other creditors to exercise their rights against the property in accordance with their security agreements and state law.  The implication is that neither the Debtors nor the Trustee has standing to bring a counterclaim seeking to avoid MERS' putative lien.  The argument is without merit.

The plan does not provide that the Real Property is surrendered to MERS.   It provides

that the Debtors will surrender their "interest in the collateral securing the claims of the

following creditors in satisfaction of *the secured portion* of such creditors' *allowed* claims."

(Emphasis added.)  MERS is one of the creditors included in the "following creditors".  It is

clear from this language that the Plan only provides for the surrender of the Real Property to

creditors in satisfaction of their claims if, and to the extent that, their claims are secured.  If it is

determined that MERS does not have an allowed secured claim, then the plan does not provide

for the surrender of the Real Property to it.  And, again, nothing in the Debtors' plan provides for

the allowance or disallowance of MERS' claim as to amount or character.

To the extent that MERS is arguing that neither the Debtors nor the Trustee have an

interest in the proceeds from the sale of the Real Property, the Court disagrees.  Even after

surrender and foreclosure, the Debtors retains a residual interest in the proceeds from the sale of

the Real Property.

> Upon a sale of the equity of redemption the proceeds, after payment of costs of sale and
> the debt secured by the second deed of trust, must be applied to lien debts subsequent to
> the second deed of trust, and any balance remaining thereafter must be paid to the
> grantor.

Kaplan v. Ruffin, 213 Va. 551, 554, 193 S.E.2d 689, 692 (1973) (Citing Seward v. New York

Life Ins. Co., 154 Va. 154, 165, 152 S.E. 346, 349 (1930)).  Also see Va. Code § 55-59.4(A.3.).[9]

---

[9]    Section 55-59.4(A.3.) provides:

The trustee shall receive and receipt for the proceeds of sale, account for the same to the
commissioner of accounts pursuant to § 26-15 and apply the same, first, to discharge the expenses of
executing the trust, including a reasonable commission to the trustee; secondly, to discharge all taxes,
levies, and assessments, with costs and interest if they have priority over the lien of the deed of trust,
including the due pro rata thereof for the current year; thirdly, to discharge in the order of their priority, if
any, the remaining debts and obligations secured by the deed, and any liens of record inferior to the deed of
trust under which sale is made, with lawful interest; and, fourthly, *the residue of the proceeds shall be paid
to the grantor or his assigns*; provided, however, that the trustee as to such residue shall not be bound by
any inheritance, devise, conveyance, assignment or lien of or upon the grantor's equity, without actual
notice thereof prior to distribution; provided further that such order of priorities shall not be changed or
varied by the deed of trust. The trustee's deed shall show the trustee's mailing address.

Further, the Trustee stands in a position to (potentially) benefit indirectly on behalf of the unsecured creditors if the Deed of Trust is avoided.  The Plan provides that unsecured creditors may expect to receive an 8% dividend.  The total amount of unsecured claims filed by creditors in this case is $12,287.87.  The Debtors scheduled the Real Property at $142,500.00 and scheduled the amount of MERS' claim at $176,689.00.  The Debtors scheduled the second deed of the trust on the property at $44,151.00.   If MERS' Deed of Trust is avoided, then the best-interest-of-the-creditors test, promulgated at 11 U.S.C. § 1325(a)(4), might require the Debtor to pay their unsecured creditors as much as 36% of their claims.[10] [11]

Both the Debtors and the Trustee (as fiduciary for the unsecured creditors), then, would have a residual interest the Real Property even if it were surrendered to creditors other than MERS who are determined to hold claims secured by an interest in the Real Property.

The purpose of this adversary proceeding is to determine the character of MERS' claim. The fact that the Real Property has been surrendered to parties with secured claims against that property does not affect whether MERS has a secured or unsecured claim in this case.  And, if MERS does not have a secured claim, then the plan does not provide for the surrender of the Real Property to MERS.

## II.

We turn now to the Trustee's motion for summary judgment.  The analysis begins with the proposition that MERS would either prevail or not prevail on the causes of action pleaded in the Culpeper Complaint.  If the Debtors were to prevail on the causes of action pleaded in the Culpeper Complaint, then MERS'  claim would not be perfected and the trustee could avoid it

---

[10]         The Fourth Circuit Court of Appeals has held that a Chapter 13 trustee can prevail on a motion to modify a plan under 11 U.S.C. § 1327(a) if the Debtor sells property for more than it was initially scheduled and the change is both substantial and unanticipated.  See In re Murphy, 474 F.3d 143, 150 (4th Cir. 2007).  It is unclear whether the Chapter 13 trustee would prevail under the facts in this case.

[11]         See calculation infra, at n. 15 and accompanying text.

under 11 U.S.C. § 543(a)(3).  If MERS were to prevail on the causes of action pleaded in the

Culpeper Complaint, then its security interest would be perfected, but only as of the date of the

filing of the memorandum of *lis pendens*.  In that event, the trustee could avoid the transfer

evidenced by the recordation of the lien under 11 U.S.C. § 547(b) and then avoid its security

interest under 11 U.S.C. § 544(a)(3).

## A.

Paragraph 544(a)(3)[12] provides in relevant part that "[t]he trustee shall have, as of the

commencement of the case, . . . the rights and powers of, or may avoid any transfer of property

of the debtor or any obligation incurred by the debtor that is avoidable by . . . a bona fide

purchaser of real property . . . from the debtor, against whom applicable law permits such

transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such

transfer at the time of the commencement of the case, whether or not such a purchaser exists."

The Trustee, then, has the rights and powers of a bona fide purchaser of the Real Property

who perfected a security interest in the Real Property by filing a duly executed deed of trust in

the land records of Culpeper County as of the commencement of this bankruptcy case.  A

bankruptcy case is commenced by the filing of a petition with the clerk of the bankruptcy court.

11 U.S.C. § 301(a).  It follows that the date of commencement of a case is the date on which a

petition is filed.  In this case, then, the Trustee has the rights and powers of a bona fide purchaser

---

[12]      Section 544(a)(3) provides that:

(a) The trustee shall have, as of the commencement of the case, and without regard to any
knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of
property of the debtor or any obligation incurred by the debtor that is voidable by–
. . .
(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against
whom applicable law permits such transfer to be perfected, that obtains the status of a
bona fide purchaser and has perfected such transfer at the time of the commencement of
the case, whether or not such a purchaser exists.

13

of the Real Property as of the date that the debtor filed this petition, August 20, 2009.

The issue then becomes, would such a creditor have a security interest in the Real Property that is superior to MERS' interest in the Real Property. It is appropriate to review the basics of law concerning of consensual claims. Consensual claims against a debtor may be categorized in a number of ways. Under one such scheme, claims may be categorized according to whether they are unsecured, secured but not perfected, or secured and perfected. First, a claim may be an unsecured *in personam* claim against a debtor. Such a claim is often evidence by a promissory note.

Second, a claim may be a secured *in rem* claim that is secured by property of the debtor. Such a claim is said to attach to the property and attachment is said to occur. In the case of an *in rem* claim secured by real property, the claim is good against the debtor if it is evidenced by a deed of trust. When attachment occurs, the security interest in the property is good against the debtor, but not necessarily against third parties that may have an interest in the Real Property.

Third, a claim may be a secured *in rem* claim that is secured by property of the debtor which security interest is perfected according to applicable law. In Virginia, a creditor must record the Deed of Trust in the land records of the appropriate county to be perfected. In the case of an *in rem* claim secured by real property in Virginia, the claim of the holder of the recorded deed of trust has a claim that is good against the debtor and non-tax creditors who subsequently acquire an interest in the real estate. If two security interests are duly recorded against the property, then the claim that is first in time takes priority over the claim that is second in time.

MERS' claim against the Debtors is evidenced by the Promissory Note and its security interest was evidenced as secured by the duly executed Deed of Trust. The Deed of Trust,

14

however, was lost and was never recorded.  Because the Deed of Trust was never recorded, the

Trustee's hypothetical secured claim granted under 11 U.S.C. § 544(a)(3) is superior to that of

MERS.

B.

MERS argues that its claim attached to the Real Property when the Debtors' executed the

Deed of Trust and that it perfected that claim when it filed the *lis pendens* on June 9, 2009,

seventy-two days before the date on which the trustee assumed rights under 11 U.S.C. §

544(a)(3).  The argument is without merit.

A *lis pendens* is not a lien.  The Virginia Supreme Court has held that the sole purpose of

a *lis pendens* is to provide notice of the impending lawsuit. See Green Hill Corp. v. Kim, 842

F.2d 742, 744 (4th Cir.1988) (quoting Bray v. Landergren, 161 Va. 699, 713 (1934) ("A lis

pendens is not a seizure. It is restrictive only and but serves to warn others that rights which they

may acquire will be subject to any valid judgment entered.")).  The filing of a *lis pendens* does

not constitute a lien, but rather gives notice of a pending action that may affect a subsequent

purchaser's rights in property.  See Wells Fargo Funding v. Gold (In re Taneja), 432 B.R. 216,

221-222 (E.D.Va. 2009).

A *lis pendens* is defined as a "pending suit" and the effect of filing a memorandum of *lis

pendens* is to give notice of a pending law suit to third parties.  12A M. J., Lis Pendens, § 2.  The

object of a notice of *lis pendens* is to warn third parties against acquiring interests in property

affected by further litigation, but the notice itself creates no lien on the property.  Id. at § 3.  A *lis

pendens* is binding on subsequent bona fide purchasers for valuable consideration from the time

that it is duly recorded in the clerk's office for the county in which the property is located.  See

Va. Code § 8.01-268.

In effect, any judgment that a plaintiff may obtain will be effective *nunc pro tunc* to the date of the filing of the *lis pendens*.  See <u>Motley v. Vicello & Bros.</u>, 132 Va. 281, 111 S.E. 295 (1922).  If MERS were to prevail in the Culpeper Action, it would have a security interest in the Real Property that was perfected as of June 9, 2009.  Because this date is within the 90-day period pre-petition, the Trustee could avoid the security interest under 11 U.S.C. § 547(b).

Section 547(b) provides that the trustee may avoid (1) a transfer of an interest of the debtor in property (2) that is made to or for the benefit of a creditor; (3) for or on account of an antecedent debt owed by the debtor before such transfer was made; (4) made while the debtor was insolvent; (5) made on or within 90 days before the date of the filing of the petition if the transferee is not an insider; and (6) that enables such creditor to receive more than such creditor would receive if the case were a case under chapter 7 of this title, the transfer had not been made; and the creditor received payment of such debt to the extent provided by the provisions of chapter 7.[13]

The trustee has the burden of coming forward with evidence proving the avoidability of the transfer under subsection 547(b).  <u>See</u> §547(g).  The trustee must carry the burden of proof

---

[13]        Section 547(b) provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made–
        (A) on or within 90 days before the date of the filing of the petition;  or
        (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;  and
    (5) that enables such creditor to receive more than such creditor would receive if--
        (A) the case were a case under chapter 7 of this title;
        (B) the transfer had not been made;  and
        (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

by a preponderance of the evidence.   5 Collier on Bankruptcy, "Preferences", ¶ 547.13 (15th ed. rev.) (And cases cited therein.).

MERS' perfection of the security interest in the Real Property constitutes a transfer of an interest of the Debtors in the Real Property.  The transfer was made for MERS' benefit.  The transfer was made on account of the debt owed by the Debtors arising pursuant to the Promissory Note some years before such transfer was made.  The first three elements are met.

The Debtors are presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.  11 U.S.C. § 547(f).  A presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party to whom it was originally cast. Fed. R. Evid. 301 as made applicable by Fed. R. Bank. P. 9017.  A presumption is rebutted, and has no further effect, once substantial evidence is introduced which would support a finding of the nonexistence of the presumed fact.  The evidence must raise a substantial doubt in the mind of the trier of fact as to the existence of the presumed fact, the insolvency of the debtor during the 90-day period pre-petition.  Russell, Bankruptcy Evidence Manual, 2005 Ed., § 301.3 (citing In re Cline, 282 B.R. 493 (Bankr. W.D. Wash. 2002)).   While discussions on the effect of legal presumptions can and do fill chapters in treatises, in this case it means that the burden of coming forward with evidence is shifted from the Trustee to MERS.

In order to successfully rebut the presumption of insolvency, MERS must come forward with evidence that supports the construction of a balance sheet that indicates that the value of the Plaintiff's assets on the date of transfer were greater that the amount of the Plaintiff's liabilities. MERS has not even pleaded that the Debtors were not insolvent at the time that the *lis pendens*

17

was filed.  The fourth element is met.

June 9, 2009, the date on which MERS filed the lis pendens would be the effective date of MERS' perfection of its security interest if it were to prevail on the action for an equitable deed of trust.  That date was 72 days before August 20, 2009, the date of petition.  The fifth element is met.

Finally, the perfection of the MERS' security interest would enable it to receive more than it would if the case were a case under Chapter 7 and the transfer had not been made.   If this were a case under Chapter 7 and the transfer were not avoided, MERS would receive most of the fair market value of the Real Property.  MERS' claim is approximately $176,689.00.  The Property is scheduled at $142,500.00.  If it is assumed that selling costs and taxes due on the Real Property will total 10% of the selling price, MERS would receive about $128,250.00 ( = 142,500.00 X .9) or 72.5% ( = $128,500.00 / $176,689.00) of its secured claim if this were a Chapter 7 case and its lien were not avoided.

If the transfer, that is the recordation of the Deed of Trust, had not been made, then MERS would hold an unsecured claim and would receive a pro rata share of the assets of the estate not securing other claims.  If the transfer had not been made, that is, if MERS did not record its lien, and the Chapter 7 trustee had avoided the security interest, MERS would share in the distribution of the proceeds from the sale of the Real Property.  There are approximately $63,330.87[14] in claims secured by an interest in the real property.   If the Real Property sold for a net price of $128,500.00, then $65,169.13 would remain to be distributed to unsecured creditors.  There are $12,287.87 in other unsecured claims.  If MERS' lien were avoided, its claim of $176,689.00 would be added to that amount and unsecured claims would total $188,976.87.

---

[14]        See Claims Register.

The dividend to unsecured creditors in Chapter 7 if the transfer is avoided would be approximately 36% ( = \$65,330.13 / \$188,976.87).[15]  This dividend is less than the 72.5% that MERS would receive if the transfer were not avoided.   The last element of the preferential transfer is met.

If MERS were to prevail on the Culpeper Action, the Trustee could avoid the recordation of its lien on the Real Property as a preferential transfer under 11 U.S.C. § 547(b) and then avoid its security interest in the Real Property under 11 U.S.C. § 544(a)(3).

### Conclusion

There is no genuine issue of material fact.  The Chapter 13 confirmation process and the claims allowance process are distinct and separate processes.  The Debtors' Chapter 13 plan does not contain a provision allowing or disallowing the character of MERS' claim.  The Trustee is not barred by the doctrine of res judicata from bringing his counterclaim.

Whether MERS would have prevailed in the Culpeper Action is not relevant to the resolution of this dispute.   If it had not been granted an equitable deed of trust, the Trustee could avoided MERS' security interest in the Real Property under 11 U.S.C. § 544(a)(3).   If it had been granted an equitable deed of trust, the Trustee could avoid the perfection of the security interest under 11 U.S.C. § 547(b) and then avoid MERS' security interest in the Real Property under 11 U.S.C. § 544(a)(3).

Accordingly, MERS motion for summary judgement will be denied and the Trustee's motion for summary judgment will be granted.

Appropriate orders and an appropriate judgment shall issue.

Upon entry of this memorandum, the Clerk shall forward copies of this order to Madeline

---

[15] This analysis does not consider administrative claims.  The omission does not affect the conclusion as the inclusion of administrative claims would only reduce MERS' hypothetical distribution in Chapter 7.

A. Trainor, Esq., C. Connor Crook, Esq., Blazer Financial Services, Samuel W. Lanham, Dr. F.

M. Graves, Equity One Consumer Loan, and Blue Ridge Orthopedic Associates, and the Chapter

13 trustee.

      Entered on this  11th  day of March, 2011.

_____
William E. Anderson
United States Bankruptcy Judge

**EXHIBIT A**

**C.** **Collateral to be surrendered.** Upon confirmation of the plan, or before, the debtor will surrender his or her interest in the collateral securing the claims of the following creditors in satisfaction of the secured portion of such creditors' allowed claims. To the extent that the collateral does not satisfy such creditor's claim, any timely filed deficiency claim to which the creditor is entitled shall be paid as a non-priority, unsecured claim. The order confirming the plan shall have the effect of terminating the automatic stay as to the collateral surrendered.

| Creditor | Collateral Description | Estimated Total Claim | Full Satisfaction (Y/N) |
|---|---|---|---|
| Litton Loan Servicing | Residence (2nd mortgage) | $44,151.00 | N |
| Americas Servicing Co. | Residence (1st mortgage) | $176,689.00 | N |
| Prince William Orthopaedics | Judgment lien on residence | $8,476.21 | N |
| Prince William Ambulatory Center | Judgment lien on residence | $2,944.27 | N |
| Equity One Consumer Loan Co. | Judgment lien on residence | $0.00 (paid in full via refinance) | Y |